UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| CARLOS LEVY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:10-0005 |
| | ) Judge Sharp |
| DAVID OSBORNE, WARDEN, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM

The Magistrate Judge has entered a Report and Recommendation ("R & R") (Docket No. 53), in which he recommends that Petitioner's amended habeas corpus petition be denied, and this case dismissed because the original petition was not timely filed, and there is no basis for tolling the statute of limitations. Petitioner filed Objections (Docket No. 54) to the R & R in which he concedes that his petition was untimely, but asserts that the evidentiary record raises factual disputes as to his English language abilities and, therefore, the Magistrate Judge should have ordered supplementation of the record or held an evidentiary hearing before recommending dismissal.

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, this Court is required to "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to," and "may accept, reject, or modify the recommended disposition, receive further evidence, or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Having undertaken that review, the Court concludes that this matter should be returned to the Magistrate Judge to receive evidence and/or hold an evidentiary hearing on the question of whether the statute of limitations should be equitably tolled

1

**I.**

In his Amended Petition for Writ of Habeas Corpus (Docket No. 39), Petitioner, Carlos Levy, raises two claims for relief. First, he asserts that his guilty plea violated the Fourteenth Amendment because, as a result of his limited understanding of the English language, he did not understand either his counsel or the trial judge and, therefore, could not voluntarily or intelligently waive his constitutional rights. Second, he asserts counsel rendered ineffective assistance in violation of the Sixth and Fourteenth Amendments by failing to secure a Spanish interpreter. The upshot of his Amended Petition is that he would not have pled guilty on April 19, 2007, to the aggravated assault, aggravated kidnaping, aggravated robbery, attempted aggravated robbery, and possession of handgun charges lodged against him had he known that he faced possible consecutive sentences.

**II.**

Petitioner's conviction became final on November 11, 2007, ninety days after the Tennessee Supreme Court denied his application for review. His original petition was not filed until January 26, 2010, long after the one year limitations period provided by 28 U.S.C. § 2244(d)(1).

As the Magistrate Judge correctly observed, the one year limitations period is subject to equitable tolling. Holland v. Florida, 130 S. Ct. 2549 (2010). As he also observed, to equitably toll the limitations period, a petitioner "must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007) (citation omitted).

In response to Respondent's contention that the Amended Petition should be dismissed as time-barred, Petitioner, through counsel, argued that he was entitled to equitable tolling because

> a. Mr. Levy entered the Tennessee Department of Correction in 2005 with virtually no ability to speak or understand English.

2

b. Mr. Levy continues to understand very little English. He is not able to understand written materials provided by the prison and has no ability to understand even basic legal terms and concepts.

c. Upon first entering the Tennessee Department of Correction, Mr. Levy spent approximately one month at the West Tennessee Reception Center. During this orientation period, the only material he received in Spanish was a list of the prison rules. He did not receive any information in Spanish regarding either his appellate rights or state and federal appellate procedure. During his short stay at this facility, he did not meet any inmates who spoke both English and Spanish and who could advise him about legal matters.

d. Mr. Levy was then transferred to the Northwest Correctional Complex ("NWCX"). The prison law library at NWCX did not have any materials in Spanish. At one point, Mr. Levy met a fellow inmate who was bilingual in Spanish and English and had some knowledge of appellate procedure. Though this fellow inmate offered to help Mr. Levy file an appeal, the inmate was transferred to another facility before he was able to do so. During the remainder of his time at the Northwest facility, Mr. Levy did not meet any other inmates who had the capacity to help him.

e. In 2009, Mr. Levy was transferred to the Morgan County Correctional Complex where he has been continuously housed in a maximum security unit. He does not have direct access to the prison law library but is provided with a list of the library's materials from which he can select volumes to be delivered to his cell. The list is entirely in English and all of the legal materials are likewise in English.

f. It was not until 2010 that Mr. Levy finally met a fellow inmate who was able to help him with legal matters. The fellow inmate drafted a federal habeas petition for Mr. Levy and also drafted a civil suit challenging inter alia the lack of interpreter services at the Morgan County facility.

(Docket No. 52 at 1-2).

After considering the "pleadings and the expanded record," (Docket No. 53 at 4), the Magistrate Judge found equitable tolling inappropriate, writing,

> Neither the trial judge nor counsel for the petitioner felt the need to obtain the services of an interpreter for him at the plea and sentencing hearings. The trial judge was able to converse with the petitioner during these hearings, though admittedly it was difficult at times. The petitioner acknowledges that, shortly after his entry into the prison system, he "met a fellow inmate who was bilingual in Spanish and English and had some knowledge of appellate procedure." Docket Entry No.52 at pg.2. The petitioner had been in this country at least three years before the limitation period

3

> expired. From these circumstances, it does not appear that the petitioner was unable
> to exercise his right of access to the courts with a little effort on his part.

(Docket No. 53 at 3-4).

### III.

In the first published appellate opinion on the issue, the Sixth Circuit in Cobas v. Burgess, 306 F.3d 441, 444 (6th Cir. 2002) held that "where a petitioner's alleged lack of proficiency in English has not prevented the petitioner from accessing the courts, that lack of proficiency is insufficient to justify an equitable tolling of the statute of limitations." Moreover, "[a]n inability to speak, write and/or understand English, in and of itself, does not automatically give a petitioner reasonable cause for failing to know about the legal requirements for filing his claims." Id.

Since then, other circuits have weighed in, concurring that the mere inability to understand English is not itself sufficient to warrant equitable tolling. See, e.g., Perez v. Florida, 2013 WL 2319827 at *2 (11th Cir. May 28, 2013) ("An inability to understand English does not constitute extraordinary circumstances justifying equitable tolling"). Some have also held, however, that "inability to read or understand English, combined with denial of access to translation or legal assistance, can constitute extraordinary circumstnaces that trigger equitable tolling," and "that the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." Pabon v. Mahanoy, 645 F.3d 385, 400-01 (3rd Cir. 2011); see, Davis v. Kelly, 515 F.3d 149, 154 (2nd Cir. 2008) ("For the prisoner who cannot read English, the obstacle is undoubtedly serious, just as it would be for a prisoner speaking only English incarcerated in a non-English-speaking country, and can, in some circumstances, justify equitable tolling").

Thus, in Mendoza v. Carey, 449 F.3d 1065, 1069 (9th Cir. 2006), the Ninth Circuit held that

4

the "combination of (1) a prison law library's lack of Spanish-language legal materials, and (2) a petitioner's inability to obtain translation assistance before the one-year deadline, could constitute extraordinary circumstances." In doing so, the court observed that this "holding comports with the decisions of other Circuits, which have rejected a *per se* rule that a petitioner's language limitations can justify equitable tolling, but have recognized that equitable tolling may be justified if language barriers actually prevent timely filing." This included the Sixth Circuit's decision in Cobas because Cobas "implicitly identifies the category of non-English-speaking inmates whose situations could constitute 'extraordinary circumstances.'" Id. at 1070. Because, however, the petitioner in Mendoza "ha[d] not yet been granted an evidentiary hearing in which his factual allegations could be established; nor ha[d] the State been provided with an opportunity to rebut [petitioner's] allegations," the Ninth Circuit remanded the case "to the district court for appropriate development of the record." Id. at 1071; see, Ramos-Martinez v. United States, 638 F.3d 315, 324 (1st Cir. 2011) (where "record is exiguous" as to whether petitioners had "a limited education and lack of familiarity with the English language," remand was necessary for "fuller development of the record").

Here, the Magistrate Judge stated that "it appears that an evidentiary hearing is not needed in this matter" (Docket No. 53 at 4), and ruled based solely on the state court record and the pleadings that had been filed in these proceedings. Respectfully, the Court does not believe that those materials adequately answer the question of whether Petitioner's alleged lack of proficiency in the English language constituted extraordinary circumstance so as to serve as a real impediment to the timely filing of his habeas petition.

While the Magistrate Judge concluded that neither the trial judge nor defense counsel felt

5

the need to obtain the services of an interpreter, the record does not show whether that was ever actually considered, even though, as the Magistrate Judge observed, the trial judge had some difficulty communicating with Petitioner. Further, while Petitioner indicated (as the Magistrate Judge stated) that he met a fellow inmate who was bilingual and had some knowledge of appellate procedure, Petitioner also claimed that (1) the inmate was transferred to another institution before he could be of assistance, (2) Petitioner was then transferred to another facility where he lacked direct access to a law library and the only material he could get was in English, and (3) it was not until sometime in 2010 that he met a fellow inmate who was able to help him with legal matters. Finally, while Petitioner may have been in the United States for three years before the statute ran, this does not really say anything about whether he has the ability to meaningfully communicate in English.

**IV.**

In returning this matter to the Magistrate Judge for receipt of evidence and/or an evidentiary hearing, the Court recognizes that the Supreme Court in Cullen v. Pinholster, 131 S.Ct. 1388 (2011) held:

> review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court.

Id. at 1398. However, the Sixth Circuit, citing Pinholster, has stated that, "[a]lthough AEDPA contains additional restrictions on a federal court granting an evidentiary hearing in a state prisoner's habeas proceeding, . . . those restrictions do not apply to the equitable tolling issue" of whether the

6

petitioner was unable to file due to mental incompetency, and the Fifth Circuit has explained that AEDPA's additional restrictions do not . . . apply to the § 2254(d) statute of limitations tolling issues . . . because whether the statue is equitably tolled is purely a federal issue, which did not arise until [petitioner's] federal habeas petition was filed." Chavez v. Sec. Florida Dept. of Corr., 647 F.3d 1057, 1060 n. 1 (5th Cir. 2011); see, Pollock v. Martel, 2012 WL 174821 at *1 n.2 (N.D. Cal. 2012) ("There is no discussion in Pinholster of equitable tolling or anything else related to the habeas statute of limitations"). Thus, while Pinholster may prove problematic in terms of Petitioner establishing his underlying ineffective assistance of counsel claim should the case get that far, it is not a bar to consideration of matters outside the state court record in determining whether he is entitled to equitable tolling of the statute of limitations. Obviously, the Court at this juncture renders no opinion on whether equitable tolling is appropriate.

V.

On the basis of the foregoing, the Court will reject the R & R, and return this matter to the Magistrate Judge for the development of an evidentiary record and a recommended disposition based upon that record.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

7